IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-01924-MJW-BNB

ANTHONY HEINIG, and
JENNIFER HEINIG,

Plaintiffs,

v.

WAL-MART STORES, INC.,

Defendants.

---

**ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 39)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This matter is before this court pursuant to an Order of Reference Pursuant to 28 U.S.C. § 636(c) issued by Senior Judge Zita L. Weinshienk upon consent of the parties to disposition of this action by a United States Magistrate Judge pursuant to D.C.COLO.LCivR 72.2D.  (Docket No. 15).

Plaintiffs, Anthony Heinig and Jennifer Heinig, former Wal-Mart employees, brought their claims in state court, and the case was removed to this court by the defendant, Wal-Mart.  (Docket No. 1).  Anthony Heinig alleges malicious prosecution, and both plaintiffs allege negligence and outrageous conduct by Wal-Mart, arising from

2

Anthony Heinig's arrest and prosecution on theft charges, which were dismissed.[1] Plaintiffs allege that Wal-Mart relied on "erroneous information," made "false allegations," and "fil[ed] criminal charges" against Anthony Heinig, which resulted in his arrest; "intentionally withheld information from Plaintiff Anthony Heinig which led to the issuance of Warrant in the City and County of Broomfield resulting in his false arrest;" "published or caused to be published a police report resulting in [the warrant];" and "maliciously pushed for the prosecution of Plaintiff Anthony Heinig despite the fact that it had no evidence that he had done anything wrong, much less commit a punishable crime." (Docket No. 1-3, Compl. ¶¶ 17, 18, 26, 29, 36). Defendant's actions allegedly led to the constructive discharge of Jennifer Heinig at Wal-Mart[2] and the termination of Anthony Heinig from a job with another employer. Plaintiffs claim emotional harm and severe financial damage.

Now before the court is Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment and Memorandum in Support and seven exhibits (Docket No. 39). Plaintiff filed a Response with one exhibit, namely, portions of a transcript purportedly of the deposition of one of the non-expert witnesses plaintiffs listed on their Will-Call list in the Final Pretrial Order. (Docket Nos. 36 at 3, ¶ 6(a)(1)(c); 44). Defendant filed a Reply with three exhibits (Docket No. 46). The court has very carefully considered all of these

---

[1]According to the Complaint, Anthony Heinig was arrested on February 10, 2006, and the charges were dismissed on November 20, 2006. (Docket No. 1-3 at 2, ¶¶ 6, 13).

[2]Plaintiff Jennifer Heinig claims she "would not return to work because she felt humiliated and anticipated that she would be harassed and subjected to a hostile work environment due to the erroneous charges made by Wal-Mart against her husband." (Docket No. 103, Compl. At ¶ 16).

3

papers as well as applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court's file. The court now being fully informed makes the following findings, conclusions, and order granting defendant's motion for summary judgment.

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003). See Fed. R. Civ. P. 56(e)(2). However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*. . . . The nonmoving party does not have to produce evidence in a form that would be admissible

at trial, but '"the content or substance of the evidence must be admissible."' . . . Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill."'" Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

**Malicious Prosecution Claim**

Plaintiff Anthony Heinig brings a claim of malicious prosecution, asserting in the Complaint:

[] Defendant maliciously pushed for the prosecution of Plaintiff

>   Anthony Heinig despite the fact that it had no evidence that he had done anything wrong, much less commit a punishable crime.
>
>   [] Defendant's malicious prosecution was an abuse of the legal process regarding its accusations and the prosecution of the case against Plaintiff Anthony Heinig.
>
>   [] Defendant's malicious prosecution caused Plaintiff Anthony Heinig to suffer needless emotional stress and financial hardship not only on Plaintiff Anthony Heinig, but also his wife Jennifer Heinig as well as their family.

(Docket No. 1-3 at 6, ¶¶ 37-39).

In its motion for summary judgment, defendant asserts that the plaintiff cannot establish all of the essential elements of a malicious prosecution claim. "To make out a viable claim for malicious prosecution under Colorado state law, plaintiff must prove that "(1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages." Warren v. Montezuma County Sheriff, 2007 WL 1106101 (D. Colo. Apr. 11, 2007) (quoting Hewitt v. Rice, 154 P.3d 408, 411 (Colo. 2007)). Defendant asserts that plaintiff cannot show three of these elements, namely, that defendant caused the institution of the criminal action, that probable cause to file the criminal complaint was lacking, and that defendant acted with malice.

This court, however, does not need to go further than element one because this court finds that there are no genuine issues of material fact with respect to whether defendant Wal-Mart contributed to bringing the criminal charges against Anthony Heinig. "[A] complaining witness may be liable for malicious prosecution for giving false testimony which leads ultimately to the filing of charges." Id. (citing Anthony v. Baker, 955 F.2d 1395, 1399 (10th Cir. 1992)). A "complaining witness" is "the person (or

6

persons) who actively instigated or encouraged the prosecution of the plaintiff. Proof of the defendant's role in instituting the criminal prosecution of the plaintiff is an essential element of a malicious prosecution claim." Anthony v. Baker, 955 F.2d at 1399, n.2. Here, however, defendant Wal-Mart has shown that it did not cause the institution of criminal proceedings against Anthony Heinig.

Plaintiffs assert in their Response that "[d]efendant can argue, *ad nauseum*, that it did not cause Mr. Heinig to be arrested. The fact remains that it was Wal-Mart that contacted Broomfield police, knowing full well that it was summoning them for the purpose of investigating potential employee theft. Of course, Wal-Mart intended that Mr. Heinig be arrested and prosecuted. There would have been no other reason to summon police." (Docket No. 44 at 11).

Defendant, however, has shown with uncontroverted evidence that its internal investigation of suspected fraudulent returns led them not to Anthony Heinig, but to Mary Harris (Rodriguez), a Wal-Mart Customer Service Manager. After interviewing Ms. Harris, defendant's District Asset Protection Manager, Jared Manning, contacted the Broomfield Police for assistance in the investigation. Police officers then questioned Ms. Harris and reviewed videotaped footage and receipts. The police report shows that Ms. Harris, not Wal-Mart, was the "complaining witness" against Anthony Heinig. There is no evidence that Wal-Mart actively instigated or encouraged the prosecution of Anthony Heinig. Instead, Ms. Harris, not Wal-Mart, told the police that "Tony," whom she described as a former manager of the Wheat Ridge Wal-Mart, was one of the men in the videos. The report states in pertinent part:

> On Wednesday, 080305, I responded to Wal-Mart in reference to

an employee theft. I arrived on scene and contacted the loss prevention district manager, Jared Manning, who told me the following:

Jared was advised of several suspicious returns that were completed by sales associate, Mary Ramirez. Jared completed an investigation into Mary's activities while she worked the front customer service desk. Jared reviewed the sales receipts, electronic transaction journal, and video recordings from the customer service desk area.

The investigation revealed Mary took several high dollar returns without receipts from 070205 until 072905. Mary would complete the receiptless returns and issue a gift card for the return amount. The gift card was used within minutes of its issuance. Mary would than [sic] complete a cash back return for the purchase made with the gift card. The total loss was over $22,835.62 for the month of July.

. . . [detailed listing of numerous transactions]

Mary completed 41 transactions without receipts or gift card purchase receipts. Mary refunded the money for these transactions to those who presented them. The total money refunded was $20,282.74.

Of the 41 transactions Mary completed, she let the person making the return leave with the merchandise on five separate occasions. . . . The total amount of the stolen merchandise was $2,552.88.

The customer service desk is monitored by store CCTV. These transactions were recorded.

I reviewed some of the videotape. In one of the videotapes, I was able to see the unknown associate involved select merchandise from the sales floor and proceed to the customer service desk. Mary completes the return and issues a gift card to the male. The same male who obtained the gift card for his return returns to Mary at the customer service counter with merchandise he purchased with the gift card. Mary completes a return of the items and gives the male cash back. The male left the customer service area. Later the same day the same male completes another similar return with Mary.

I spoke with Mary in reference to the returns, Mary was not in custody and I was asking her questions to clarify company policy and to find out what happened. I spoke with Mary in the back room of Wal-Mart after I spoke with the management. I asked Mary what company policy as . . . . [details various policies and Mary's practices]  Mary's statements were contradicted by what was obser

> . . .
>
> I told Mary it was apparent she was not telling me the entire story. I asked Mary if she would tell me what happened. Mary told me the following:
>
> Mary stated she was aware that five people were making fraudulent returns to her while she worked at the customer service desk. **Mary described one white male named Tony as the male in the video; two other white males and two white females are involved. Mary knew Tony as the former assistant manager from the Wheat Ridge Wal-Mart.** Mary stated it was "a big mistake" to have made the returns.
> . . .

(Docket No. 39-8 at 8-14) (emphasis added). The police report further states that the reporting officer (not Wal-Mart) presented the case for filing to the District Attorney's Office on August 9, 2005, and the District Attorney accepted the charges against Mary Ramirez. (Docket No. 39-8 at 14-15). The report then states a Wal-Mart associate identified "Tony," who was the former Wheat Ridge Assistant Manager implicated by Mary Harris, as Anthony Heinig, and the officer located a driver's license for Anthony Heinig. The officer then presented a photograph line-up to an Assistant Manager at Wal-Mart, who positively identified Anthony in the photo array as being the male on the videotape identified as Tony by Mary Harris. (Docket No. 39-9 at 15). Next, the officer reported that "[o]n Tuesday, 090605, I filed this case with an affidavit for an arrest warrant with the District Attorney's Office with [sic]. The warrant for Anthony Heinig was accepted and signed by the judge. The warrant for theft was entered into CCIC with a statewide extradiction [sic]. The bond amount was set at $5,000.00." (Docket No. 39-8 at 15).

Plaintiffs have not presented any evidence as required by Fed. R. Civ. P. 56 to controvert defendant's showing that Wal-Mart did not cause the institution of criminal

proceedings against Anthony Heinig.  The court thus need not address the additional elements of a malicious prosecution claim.  Plaintiff's malicious prosecution claim fails as a matter of law.

### Outrageous Conduct Claim

Plaintiffs also claim that the defendant's conduct was outrageous.  They assert the following in their Complaint:

> [] Defendant relied on erroneous information that led to Plaintiff Anthony Heinig's arrest for Felony Theft of cash and merchandise between $15,000 and $20,000.
>
> [] Defendant intentionally withheld information from Plaintiff Anthony Heinig which led to the issuance of a Warrant in the City and County of Broomfield resulting in his false arrest.
>
> [] Defendant's allegations which were brought by the District Attorney ended in Heinig's favor, with the case being dismissed on November 20, 2006 causing irreparable harm to Plaintiff Anthony Heinig.
>
> [] Plaintiff was arrested by four officers with the guns drawn and aimed at him.

(Docket No. 103 at 4, ¶¶ 18-21).  In their Response to the summary judgment motion, plaintiffs assert the following with respect to their outrageous conduct claim:

> Defendant subjected Plaintiffs to extreme emotional distress.  One can only imagine the degree of emotional distress they suffered, following Mr. Heinig's arrest, over the ensuing months, as he faced prosecution for crimes he did not commit.  Any reasonable juror would find what Defendant has done to Plaintiffs to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Indeed, if this were a defamation action, he would be able to establish his claim, *per se*, without even proving damages.
>
> As discussed, Defendant had no probable cause to believe that Mr. Heinig had done anything wrong.  Any probable cause that it believed it had was based in a false premise: that Defendants performed a competent investigation of Mr. Heinig's alleged activities.

10

(Docket No. 44 at 13).

In order to prove the state-law claim for "outrageous conduct," defendant Wal-Mart's actions must be

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Churchey v. Adolph Coors Co., 759 P.2d 1336, 1350 (Colo. 1988). The following test has been set forth for an outrageous conduct claim in Colorado: "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Id. (quoting Rugg v. McCarty, 173 Colo. 170, 177, 476 P.2d 753, 756 (1970)). Although "the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question." Culpepper v. Pearl Street Bldg., Inc., 877 P.2d 877, 883 (Colo. 1994). See Bauer v. Southwest Denver Mental Health Center, Inc., 701 P.2d 114, 118 (Colo. App. 1985) ("The trial court must determine, as a threshold matter of law, whether the defendant's alleged conduct was sufficiently heinous to create a submissible claim. If, after viewing the evidence in the light most favorable to the plaintiff, the court determines that no reasonable person could conclude that the defendant's conduct was outrageous, summary judgment is appropriate.").

Here, viewing the evidence in the light most favorable to the plaintiffs, this court

11

finds that no reasonable person could conclude that the defendant's conduct with respect to Anthony Heineg or his wife was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." As detailed above, the uncontradicted evidence shows that Wal-Mart contacted the police about Ms. Harris, not plaintiff Anthony Heinig. Furthermore, there is no evidence that Wal-Mart encouraged the District Attorney's Office to prosecute Anthony Heinig.

Plaintiffs challenge the internal investigation done by Wal-Mart as inadequate and claim the conclusions therefrom as false. They support their allegations solely through portions of a deposition purportedly of Roger Crawford, a friend of the plaintiffs, whom plaintiffs now characterize as an expert witness.[3] Plaintiffs, however, have never disclosed or qualified Mr. Crawford as an "expert" in this case. In fact, in the Final Pretrial Order, plaintiffs state that there are no expert witnesses to be called. (Docket No. 36 at 6). Instead, Mr. Crawford is merely on plaintiffs' list of "will call" non-expert witnesses. Furthermore, as shown by the defendant, Mr. Crawford was not employed by Wal-Mart during the relevant time frame, did not have any involvement in Wal-Mart's internal investigation of Mary Harris, and did not investigate any Wal-Mart associates for fraudulent returns while employed at Wal-Mart. In addition, the portions of Mr.

---

[3] In their Response, plaintiffs state that "[d]uring Mr. Crawford's deposition, Defendant went to exhaustive lengths to question him regarding his background, which firmly established his credentials as an expert in retail loss prevention. Indeed, Mr. Heinig's criminal defense attorneys retained him to serve as an expert in that area." (Docket No. 44 at 5). None of those credentials, however, were set forth in the plaintiffs' Response or exhibit, so they are not before the court. In any event, plaintiffs have not disclosed Mr. Crawford, or anyone for that matter, as an expert in this case.

12

Crawford's purported deposition filed by plaintiffs with their Response do not identify the documents and videotapes Mr. Crawford claims to have reviewed. Moreover, as correctly asserted by defendant, Mr. Crawford's testimony constitutes no more than mere general conclusions without any factual support. Neither Mr. Crawford nor the plaintiffs have identified any specific transactions upon which Wal-Mart should not have relied when deciding to contact the police department about Ms. Harris or any evidence that Wal-Mart should have discovered prior to contacting the police department. As noted above, in responding to a summary judgment motion, the plaintiffs "must respond with specific facts showing the existence of a genuine factual issue to be tried, " and "[u]nsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Southway, 149 F. Supp.2d at 1273. Plaintiffs here have failed to respond with any specific facts showing the existence of a genuine issue of material fact. The court finds that the portion of the deposition transcript submitted by plaintiffs does not create a genuine issue of material fact with respect to the adequacy of defendant's investigation of Ms. Harris.

Based upon the findings above, plaintiffs' outrageous conduct claim fails.

**Negligence Claim**

Plaintiffs also bring a claim of negligence, asserting the following in the Complaint:

> [] Defendant and its agents or employees have a duty to act responsibly when making serious allegations against Plaintiff Anthony Heinig.
>
> [] Defendant's [sic] were willful and wanton in their actions against

13

> Plaintiff in filing criminal charges against Plaintiff Anthony Heinig which led to the constructive discharge of Plaintiff Jennifer Heinig with Wal-Mart as well as the termination of Plaintiff Anthony Heinig from a secure job with another employer.
>
> [] Defendant in their negligent actions proximately caused emotional injuries to the Plaintiffs.

(Docket No. 1-3 at 5, ¶¶ 33-35). As found above, however, the uncontroverted evidence shows that the defendant did not file criminal charges against Anthony Heinig and that Ms. Harris, not Wal-Mart, implicated Anthony Heinig. In addition, the portion of the deposition transcript submitted by plaintiffs does not create a genuine issue of material fact with respect to the adequacy of defendant's investigation of Ms. Harris. Plaintiffs' negligence claim as stated in the Complaint thus also fails.

In their Response, plaintiffs raise a negligent hiring and/or supervision claim based upon Wal-Mart's employment of Jared Manning, who contacted the police department about the internal investigation regarding the questionable returns allegedly processed by Mary Harris. Plaintiffs, however, did not raise such a claim in their pleading and have not sought to amend it at this late date. They cannot and will not be permitted to raise a new claim for relief in their Response. Even if the court were to consider such a claim at this late date, for the reasons stated in the defendant's Reply, this court finds that Wal-Mart would be entitled to summary judgment on such claim.

Based upon the findings above, it is unnecessary to address defendant's other arguments in its motion for summary judgment.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Defendant Wal-Mart Stores, Inc.'s Motion for Summary

14

Judgment (Docket No. 39) is **granted**. Judgment shall enter in favor of the defendant and against the plaintiffs. Defendant shall have its costs. It is thus further

**ORDERED** that the Unopposed Motion to Extend Deadline to Submit Motions In Limine (Docket No. 47) and Wal-Mart's Motion In Limine to Exclude Inadmissible Evidence (Docket No. 48) are **denied as moot**. It is further

**ORDERED** that the Trial Preparation Conference set for January 27, 2010, at 8:30 a.m. and the jury trial set for February 16, 2010, at 8:30 a.m. are **vacated**.

Date:  October 16, 2009                     s/ Michael J. Watanabe
       Denver, Colorado                     Michael J. Watanabe
                                            United States Magistrate Judge